IN THE UNITED STATES  DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

GEORGE J. SANDERS, JR.,          )
                                 )
        Plaintiff,               )
                                 )
        v.                       ) CIVIL ACTION NO.: 2:09cv771-MEF-TFM
                                 )              [WO]
M. P. MYRICK,  *et al.*,         )
                                 )
        Defendants.              )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

In this 42 U.S.C. § 1983 action, George J. Sanders, Jr., a state prisoner, challenges the

constitutionality of actions taken against him during the course of his arrest.  Sanders names

Magistrate R.T. Perguson, City of Montgomery Police Department Officers B.E. Thornell

("Detective Thornell"), J.M. Douglas ("Officer Douglas"), S.E. Wilson ("Officer Wilson"),

M.P. Myrick ("Officer Myrick"), T.B. Bascomb ("Officer Bascomb"), C. Wingard ("Officer

Wingard"), and Keith Barnett ("Officer Barnett"), and Chief Art Baylor as defendants.

Specifically, Sanders asserts the following claims:

(1)     Officers Douglas and Bascomb acted with excessive force during the course

        of an investigation of a home invasion in violation of the Fourth and

        Fourteenth Amendments to the United States Constitution.

(2)     Officers Thornell, Wilson, Bascomb, and Douglas acted with deliberate

        indifference to his safety by failing to intervene during the shootout in

        violation of his constitutional rights.

(3)     He was arrested without probable cause in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

In accordance with the orders of the court, Defendants filed an Answer, Special Report, and supporting evidentiary material in response to the allegations contained in the Amended Complaint.  The court then informed Plaintiff that the Special Report may, at any time, be treated as a Motion for Summary Judgment, and the court explained to Plaintiff the proper manner in which to respond to a Motion for Summary Judgment. Plaintiff took advantage of the opportunity granted to file a response to the Special Report filed by Defendants.  This case is now pending on Defendants' Motion for Summary Judgment. Upon consideration of such Motion, the evidentiary materials filed in support thereof, and Plaintiff's Response, the court concludes that the Motion for Summary Judgment is due to be granted.

## I.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine . . . [dispute][1] as to any material fact and that the moving party is entitled to

---

[1] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination." *Id.*  "'Shall' is also restored to express the direction to grant summary judgment." *Id.*  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine . . . [dispute] as to any material fact and that the movant is entitled to judgment as a matter of law.").[2]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine issue material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and

---

[2]Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules.  These changes ... are stylistic only."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). Consequently, to survive the defendants' properly supported motion for summary judgment, the plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting her claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose

a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to her case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only

factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906

6

F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Plaintiff has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment on his claims against Defendants.

## II.  BACKGROUND[3]

While patrolling the City of Montgomery around 7:00 p.m. on the evening of November 5, 2008, Officers Douglas, Bascomb, and Rider and Detective Thornell were dispatched to a possible home invasion at 654 North Pass Road.  At the residence, Officer Douglas ran to the rear of the apartment building and Officer Bascomb and Detective Thornell stood by the front door.  (Def's Ex. 1, Officer Bascomb's Affid., p. 1.)  Officer Bascomb heard someone inside the apartment tell the victims to get onto the floor.  (*Id.*)

When backup units arrived and secured the front of the apartment, Officer Bascomb and Detective Thornell went to the next door neighbor's apartment.  (*Id.*, at p. 2.) The neighbor told them that she heard yelling coming from Apartment 654 and unlocked her back door for the officers.  Upon exiting through the back door, Officer Bascomb found Officer Douglas near the east corner of the walkway and advised him what he had heard.  (*Id.*) Detective Thornell returned to the front of the building.  (*Id.*)

While standing on the walkway, Officer Bascomb heard slamming noises coming

---

[3]   As recounted by the court, these facts are stated favorably for the plaintiff.  The court makes no factual findings, and the actual facts may be different than those stated here.

from a bedroom in Apartment 654.  (*Id*.)  Shortly thereafter, Sanders and three other suspects wearing hoodies and bandanas went out the back door of the apartment.  (*Id*.)   One of the suspects, Harrison Giles ("H. Giles") held a pistol grip shotgun in one hand and a remote control device in the other.  (Doc. No. 124, Pl's Resp., p. 2.)  Another suspect, Samuel Giles ("S. Giles"), carried wires in his hand.  (*Id*.)  Roderick Johnson ("Johnson") and Sanders were empty-handed.  (*Id*.)

As the suspects began walking toward the corner of the apartment building, Officer Douglas stepped around the corner.  (*Id*.; Def's Ex. 2, Officer Douglas' Supplemental Affid., p. 1.)  H. Giles said "Oh sh–!"  (Def's Ex. 1, p. 2.)  Officer Douglas ordered the suspects to drop their weapons and turn around.  (Pl's Ex. 1, Pl's Affid., p. 1.)  Sanders, H. Giles, S. Giles, and Johnson surrendered.  (Doc. No. 124, Pl's Response, p. 2.)  As Sanders turned around and placed his hands behind his head (Pl's Affid., p. 1), Officers Bascomb and Douglas discharged their weapons several times.  (Def's Ex. 1, p. 2;  Def's Ex. 2, p. 1-2.)

Sanders ran into Apartment 654 and hid under the bed.  (Pl's Affid., p. 2.)  A few minutes later, he went out the front door and said, "Don't shoot, I already been shot."  (*Id*.)

During the incident, four people received gunshot wounds.  Sanders was shot in the left hand, H. Giles was shot once in the buttocks, and Detective Rider was shot in the torso. (Pl's Affid., p.2; Def's Ex. 1, Bascomb's Affid., p. 2.) Johnson was shot multiple times and subsequently died.  (Def's Ex. 1, Bascomb's Affid., p. 2).

Sanders was transported to Jackson Hospital for treatment.  (Doc. No. 41, Pl's

Amended Comp., p. 4.)   As Sanders left the hospital in a jail uniform and got into a patrol car, the robbery victims and their family members yelled, "The police should have killed your ass." (*Id.*)  Sanders subsequently pleaded guilty to seven counts of first-degree robbery and one count of felony murder.  (Def's Ex. 4.)  His co-defendant, H. Giles, pleaded guilty to seven counts of first-degree robbery, one count of felony murder, and one count of attempted murder.[4]  (Def's Ex. 5.)

Sanders complains that the officers did not have probable cause to arrest him without a warrant, that Officers Bascomb and Douglas subjected him to an unnecessary use of force during the incident in question when he was shot in the hand as he was surrendering, and that Officers Wilson, Thornell, Bascomb, and Douglas failed to intervene.  Accordingly, as framed by the parties, the dispute in this matter is whether the defendants had probable cause to arrest Sanders for robbery, whether Officers Bascomb and Douglas used excessive or unnecessary force during the arrest, and whether Officers Wilson, Thornell, Bascomb, and Douglas failed to intervene.  The Defendants contend that they did not violate Sanders' constitutional rights and that in any event they are protected from liability by qualified immunity.

## III. DISCUSSION

---

[4]During the plea colloquy, H. Giles admitted that he left the apartment with a shotgun; however, when questioned whether gunfire was exchanged, he stated, "They fired.  I ain't fire.  They fire."  (Def's Ex. 5, p. 8.)  To further develop the factual basis for entering the plea, the prosecutor stated, "And the officer would testify that there was a shotgun aimed at him when – at the backdoor area, Judge."  (*Id.*)  H. Giles did not object to the additional facts.  (*Id.*)

A. *Qualified Immunity*

Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536, U.S. 730, 739 (2002) and *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but rather immunity from suit. *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (citation omitted) To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute that Defendants were acting within the course and scope of their discretionary authority.  Plaintiff must, therefore, allege facts that, when read in a light most favorable to him, show that these Defendants are not entitled to qualified immunity.  *Cottone v. Jenne*, 326 F.3d 1352,  1358 (11th Cir. 2003).

To satisfy his burden, Plaintiff must show two things: (1) that Defendants committed a constitutional violation and (2) that the constitutional right Defendants violated was "clearly established." *Crosby v. Monroe County*, 394 F.3d 1328,  1332 (11th Cir. 2004). Courts now have discretion to determine the order in which the two prongs of Plaintiff's burden of proof are analyzed. *Pearson*, 129 S.Ct. at 818-19 (Courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case hand.").

*B. False Arrest*

Officer Bascomb maintains that he heard someone inside the apartment tell the occupants to get onto the floor and that he saw Sanders and three other men wearing hoodies and bandanas covering their faces exit the residence.  He also saw H. Giles holding a pistol grip shotgun in one hand and a remote control device in the other and S. Giles carrying wires in his hand.  (Def's Ex. 1, Officer Bascomb's Affid., pp. 1-2.)  It is undisputed that during the course of the robbery, Johnson was shot multiple times and subsequently died.  (*Id*., p. 2).

Defendants contend that the arrest did not violate Plaintiff's Fourth Amendment rights because they had probable cause for the arrest which constitutes a complete defense to a false arrest claim.  *Case v. Eslinger*, 555 F.3d 1317, 1326-27 (11th Cir. 2009); *Von Stein v. Brescher,* 904 F.2d 572, 584 n. 19 (11th  Cir. 1990).  Probable cause to arrest exists if the facts and circumstances within the police officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed or is committing an offense. *Ortega v. Christian,* 85 F.3d 1521, 1525 (11th Cir.1996).   A warrantless arrest in a public place may be made when the arresting officers have probable cause to believe that the suspect has committed, is committing, or is about to commit a crime.  *See Beck v. Ohio*, 379 U.S. 89, 91 (1964) (Probable cause exists if "at that moment the facts and circumstances within [the officers] knowledge and of which they had reasonably trustworthy information were sufficient to

warrant a prudent man in believing that the petitioner had committed or was committing an offense."); *see also Harper v. Harris County*, 21 F.3d 597, 601 (5th Cir. 1994).

Under certain circumstances, an officer may be entitled to qualified immunity if there was "arguable probable cause" for Plaintiff's arrest. *See Davis v. Williams,* 451 F.3d 759, 762-63 (11th Cir. 2006) (stating that in the context of a claim for false arrest, an officer is entitled to qualified immunity where that officer had "arguable probable cause" to effectuate the arrest); *Jones v. Cannon*, 174 F.3d 1271, 1283 n.3 (11th Cir. 1999) (same); *see also Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (law enforcement officials entitled to qualified immunity where they reasonably, but mistakenly, determine that probable cause exists); *Skop v. City of Atlanta*, 485 F.3d 1130, 1137-38 (11th Cir. 2007) (same).   Arguable probable cause exists where an objectively reasonable officer in the same circumstances and possessing the same knowledge as the officer effectuating the arrest could have believed that probable cause existed.  *Jones*, 174 F.3d at 1283;  *see also Thornton v. City of Macon,* 132 F.3d 1395, 1399 (11th  Cir. 1998).   Additionally, under federal and state law, "the validity of an arrest does not turn on the offense announced by the officer at the time of the arrest."  *Lee,* 284 F.3d at 1196.  Where probable cause existed to arrest Plaintiff for any offense, his arrest and detention were valid even if probable cause was lacking as to some of the offenses with which he was charged  or even as to all the announced charges. *Id.*

"Whether a particular set of facts gives rise to probable cause or arguable probable cause for arrest depends . . . on the elements of the crime.  *Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir. 2004).  Defendants placed Plaintiff under arrest for first-degree

robbery.  Robbery in the first degree is a violation of Ala. Code § 13-8-41 (1975), which

provides, in pertinent part:

> (a) A person commits the crime of robbery in the first degree if he violates Section 13A-8-43 and he:
>
>> (1) Is armed with a deadly weapon or dangerous instrument; or
>>
>> (2) Causes serious physical injury to another.

Under Ala. Code § 13A-8-43 (1975):

> (a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:
>
>> (1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance; or
>>
>> (2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property.

The facts clearly establish that the officers had probable cause to apprehend and arrest

Sanders for robbery during a home invasion when he exited the apartment with other

suspects who were wearing hoodies and bandanas covering their faces and carrying

electronic devices and a shotgun.  The facts also demonstrate that the officers had probable

cause to arrest Sanders for first-degree robbery upon learning that one of the suspects was

dead and an officer was wounded.  Under the circumstances, the defendants had probable

cause to arrest Sanders.  The defendants are, therefore, due to be granted summary judgment

with regard to Plaintiff's false arrest claim.[5]

### C. Excessive Force

Sanders complains that Officers Bascomb and Douglas subjected him to excessive force by shooting him after he put his hands behind his head.  Officers Bascomb and Douglas deny that any of their actions amounted to an excessive use of force under the circumstances and assert the defense of qualified immunity.  (See Doc. Nos. 89 & 119.)

Plaintiff's allegation of excessive force during the course of an arrest is analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v. Connor,* 490 U.S. 386 (1989); *Crenshaw v. Lister,* 556 F.3d 1283, 1290 (11th Cir. 2009); *Vinyard,* 311 F.3d at 1346-47; *Lee,* 284 F.3d at 1197.  A right is clearly established - and an officer cannot receive qualified immunity - if the "objectively reasonable police officer" would have realized that the conduct violated the constitution.  *Davis v. Williams*, 451 F.3d 759, 762 (11th Cir. 2006).

In balancing the necessity for the use of force against an arrestee's constitutional rights, the determination of whether excessive force was used during an arrest "requires careful attention to the facts and circumstances of each particular case," while keeping in

---

[5]The record in the instant proceeding reflects that Sanders pleaded guilty to seven counts of robbery in the first degree and one count of felony murder.  (Doc. No. 89, Def's Exh. 4.)  To the extent Plaintiff seeks to challenge the validity of these convictions, § 1983 may not be used to challenge the fact of a plaintiff's state court criminal conviction and/or sentence. *See Edwards v. Balisok,* 520 U.S. 641, 648 (1997)*; Heck v. Humphrey,* 512 U.S. 477, 483-89 (1994). Rather, the proper vehicle for mounting such a challenge would be the filing of a petition under 28 U.S.C. § 2254.

mind that "police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." *Graham,* 490 U.S. at 396-97. With respect to determining whether the force applied was "reasonable" under the circumstances, the court examines: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; and (3) the extent of the injury inflicted upon the individual to whom the force was applied, *Vinyard,* 311 F.3d at 1347; *Lee* 284 F.3d at 1198, which usually requires an analysis of several factors including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396; *Vinyard*,  311 F.3d at 1347; *Lee*, 284 F.3d at 1197. "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S.  at 396; *Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003);  *Nolin v. Isbell*, 207 F.3d 1253, 1258 n. 4 (11th Cir. 2000).  The reasonableness of the force used "is judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham*, 490 U.S. at 396.  If the force applied was reasonable under the circumstances and not excessive, the police officer has not violated any clearly established constitutional right and is entitled to summary judgment based upon qualified immunity.  *Moore v. Gwinnett County,* 967 F.2d 1495, 1498 (11th Cir. 1992).  While reasonable measured uses of force may be applied to effect a suspect's arrest, "gratuitous use of force when a criminal suspect is not resisting arrest

15

constitutes excessive force." *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008).

Sanders alleges that the officers began firing at him and the other suspects after they surrendered. Consequently, Sanders has alleged the deprivation of a constitutional right. *See Saucier*, *supra*.

Officers Bascomb and Douglas deny that the force used against Sanders was excessive. The defendants assert that the use of force was necessary because a co-defendant did not comply with their orders and pointed a shotgun at Officer Douglas. Both Officers Bascomb and Douglas maintain that they discharged their weapons because they feared for their safety. At this juncture, the court must take the facts as alleged by Sanders as true. In the light most favorable to Sanders, the officer would not have been justified in shooting Sanders as he submitted to arrest. Thus, there is a factual dispute concerning whether the use of force was necessary and that the force used was excessive under the circumstances. As there are genuine disputes of material fact, the court declines to decide the qualified immunity issue at this stage of the proceedings. *See Cottrell v. Caldwell*, 85 F.3d 1480, 1487-88 (11th Cir. 1996); *Jones v. City of Atlanta*, 192 Fed. Appx. 894 (11th Cir. 2006). Based on the forgoing, the motion for summary judgment with respect to the Fourth Amendment claim against Officers Bascomb and Douglas should be denied.

## D.  Failure to Intervene

Sanders asserts that Officers Wilson, Thornell, Bascomb, and Douglas acted with deliberate indifference to his safety by failing to intervene and protect him from the shooting.

To prevail in a suit based on an alleged failure to protect, a plaintiff must show at a minimum that a law enforcement official acted with deliberate indifference. *See Estelle v. Gamble*, 429 U.S. 97 (1976); *Marsh v. Butler Co.*, 268 F.3d 1014, 1028 (11th Cir. 2001); *Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985). A law enforcement official may be held liable under the Constitution for acting with "deliberate indifference" to an individual's health or safety when the official knows that the individual faces a substantial risk of serious harm and, by failing to take reasonable measures to abate it, disregards that risk. *Farmer v. Brennan*, 511 U.S. 825 (1994).

Sanders fails to show that the defendants knew or should have known that Officers Bascomb and Douglas were going to discharge their weapons. Sanders presents no evidence showing that Officers Wilson and Thornell knew that a shootout would occur. More importantly, the undisputed facts render it impossible for Officers Wilson or Thornell to intervene during the incident. Neither Officer Wilson nor Officer Thornell were at the rear of the apartment building during the shootout.

Based on the foregoing, the court concludes that the motion for summary judgment with respect to Sanders' claim that the defendants acted with deliberate indifference to his safety by failing to intervene during a shootout should be granted. There is no evidence from which a reasonable fact-finder could conclude that any of the named defendants were aware that Sanders would be harmed or that they failed to take reasonable measures to abate the risk.

E.    *Judicial Immunity*

To the extent Sanders' challenges the issuance of an arrest warrant by Magistrate R.T. Perguson, Sanders is not entitled to this relief as the allegations arise from actions taken by Magistrate Perguson in his judicial capacity during court proceedings over which he had jurisdiction.  The Fourth Amendment claims against Magistrate Perguson  relate to acts performed within the function of his judicial office.  The law is well established that a judge is "entitled to absolute judicial immunity from damages for those acts taken while ... acting" pursuant to his judicial authority. *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000);  *Forrester v. White*, 484 U. S. 219, 227-229 (1988); *Paisey v. Vitale in and for Broward County*, 807 F.2d 889 (11th Cir. 1986); *Stump v. Sparkman*, 435 U.S. 349 (1978). "This immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction." *Bolin*, 225 F.3d at 1239. "The office of magistrate is a hybrid creature, combining both clerical attributes and limited judicial atrributes." *City of Bayou La Batre v. Robinson*, 785 So. 2d 1128, 1133 (Ala. 2000).  However, the "issuance of arrest warrants" falls within the limited delegated judicial powers of a magistrate. *Woodard v. Town of Oakman*, 885 F.Supp.2d 1216, 1231 (N.D. Ala. 2012).  Thus, issuing an arrest warrant clearly falls within the scope of Magistrate Perguson's duties. Consequently, summary judgment should be granted in favor of Magistrate Perguson.


F.    *Former Police Chief Baylor*

The plaintiff sues former Police Chief Baylor for the alleged actions of the police officers. A plaintiff seeking to recover money damages against a person in their official capacity "must look to the government entity itself." *Kentucky v. Graham,* 473 U.S. 159, 166 (1985); *see also, Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999); *Vineyard v. County of Murray, Georgia*, 990 F.2d 1207, 1210 n.3 (11th Cir. 1993); *Owens v. Fulton County*, 877 F.2d 947, 951 n.5 (11th Cir. 1989) ("For liability purposes, a suit against a public official in his official capacity is considered a suit against the local government entity he represents."). Thus, because the proper defendant in official action claims is the local government entity, the claims against defendant Baylor in his official capacity are due to be dismissed.

The court next turns to the claims against Chief Baylor in his supervisory capacity. Neither Sanders' complaint, as amended, nor any evidentiary materials show that Chief Baylor had anything to do with any harm alleged by Sanders. Thus, Chief Baylor is sued solely due to his position as former Chief of Police for the City of Montgomery. However, the law is well settled that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Miller v. King*, 384 F.3d 1248, 1261 (11th Cir. 2004); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability). Thus, Chief Baylor can be held liable in this case only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions ... and the alleged constitutional deprivation."

19

*Cotton v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citation omitted).

Sanders does not allege that Chief Baylor personally participated in the actions about which he complains.  Additionally, Sanders fails to present any facts which indicate a causal relationship between an action undertaken or policy enacted by these defendants and the alleged constitutional deprivation.   A supervisory official "may be liable only for implementing a policy that is 'itself [ ] a repudiation of constitutional rights' and 'the moving force of the constitutional violation.'  *Grandstaff v. City of Borger*, 767 F.2d 161, 169, 170 (5th Cir. 1985)."  *Oliver v. Scott*, 276 F.3d 736 (5th Cir. 2006).  Consequently, the claims against these defendants lack an arguable basis in law and therefore are due to be dismissed.

Although supervisory officials cannot be held liable under § 1983 for the unconstitutional actions of their subordinates based on respondeat superior liability, *Gray*, *supra*, supervisors can be held liable for subordinates' constitutional violations on the basis of supervisory liability under 42 U.S.C. § 1983.  *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  Supervisory liability under § 1983 occurs "when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation."  *Id.*  A causal connection may be established when: (1) a "history of widespread abuse" puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; (2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to

20

stop them from doing so.  *Mathews v. Crosby,* 480 F.3d 1265, 1270 (11th Cir. 2007); *Cottone*, 326 F.3d at 1360.  Deprivations that constitute wide spread abuse sufficient to constitute notice to the supervising official must be "obvious, flagrant, rampant and of continued duration rather than isolated occurrences." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).

Sanders does not allege that Chief Baylor was involved in the shootout.  Sanders also fails to present any evidence indicating that there is a history of widespread abuse which placed Baylor on notice of a need to stop an alleged deprivation, that a custom or policy resulted in deliberate indifference to Sanders' constitutional rights, or that he directed subordinates to act unlawfully or failed to stop them from doing so.   Moreover, it is clear that Chief Baylor was not in any way involved with the actions about which Sanders complains and that this defendant is being sued based on his administrative position.  Thus, the Motion for Summary Judgment is due to be granted with respect to the claims against Chief Baylor.

Furthermore, to prevail against Chief Baylor in his individual capacity, the plaintiff must show that this defendant was personally involved in acts or omissions that resulted in the constitutional deprivation. *Hale v. Tallapoosa County*, 50 F.3d 1579 (11th Cir. 1995). The language of § 1983 plainly requires proof of an affirmative causal connection between the actions taken by a defendant and the constitutional deprivation. *Swint v. City of Wadley, Ala.*, 51 F.3d 988, 990 (11th Cir. 1995). The plaintiff has presented no facts from which the court could conclude that there is a genuine issue of material fact regarding whether Chief

Baylor was involved in this incident.  The plaintiff has presented no facts that even remotely connect or involve this defendant with the shooting outside the apartment after a home invasion.  In view of the foregoing, the court concludes that the motions for summary judgment with respect to the plaintiff's claims against former Police Chief Baylor are due to be granted.

## G. *Conspiracy*

Sanders asserts that the defendants conspired to withhold information indicating that Detective Rider discharged his weapon at the co-defendants and to charge him with robbery and felony murder without probable cause.  The assertions made by Sanders with respect to a conspiracy are self serving, purely conclusory allegations which fail to assert those material facts necessary to establish the existence of a conspiracy.  *Strength v. Hubert*, 854 F.2d 421, 425 (11th Cir. 1988) (to properly state a claim for relief based on a conspiracy, a plaintiff must plead that the offending parties "reached an understanding" to deny the plaintiff his constitutional rights); *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992) (merely "stringing together" acts, without showing parties "reached an understanding" to violate plaintiff's rights, is insufficient to demonstrate the existence of a conspiracy).  Other than his suppositious allegations, Sanders presents nothing to establish an actual conspiracy among the defendants nor can this court countenance the existence of any evidence which would indicate the defendants entered into a conspiracy to subject Sanders or any other

inmate to an unprovoked assault during the search at Easterling.  In light of the foregoing, the court concludes that Sanders' allegations regarding a conspiracy by the defendants are clearly insufficient to support a claim for relief under 42 U.S.C. § 1983.  *Harvey*, 949 F.2d at 1133; *Fullman*, 739 F.2d at 556-557.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.   The Motion for Summary Judgment with respect to the claims of excessive force against Officers Bascomb and Douglas be DENIED.

2.   The Motion for Summary Judgment with respect to the remaining claims be GRANTED in favor of the defendants.

3.   Magistrate Perguson, Former City of Montgomery Police Chief Baylor, and Officers Thornell, Wilson, Myrick, Wingard, and Barnett be DISMISSED as defendants in this case.

4.   This case be set for a jury trial on the plaintiff's claim of excessive force lodged against Officers Bascomb and Douglas.

It is further

ORDERED that the parties may file any objections to the Recommendation on or before **April 23, 2013**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit Court of Appeals handed down prior to the close of business on September 30, 1981.

Done this 8th day of April, 2013.


_____/s/Terry F. Moorer_____
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE

24